Welcome to the United States Court of Appeals for the Fourth Circuit. We have four cases on for argument this morning. The first is 22-1895, Friedler v. Stifel, Nicolaus, & Company, Inc. Mr. Rosen. May it please the Court. Good afternoon. It's not yet afternoon, but we'll get there eventually. Don't wish our day away. Go ahead. I stayed corrected already. There's more to come. The admissions against interest in this case were very clean, very clear, and binding on the arbitral panel. The most significant admission was a judicial admission that the and that he was trading in put sales, which are level four, the most risky options that exist in the marketplace. This discretion was not properly authorized. That was conceded because the claimants did not sign documents allowing that, and the brokerage, Stifel, did not approve him to engage in discretionary trading, which it was required to do in writing. Beyond Mr. Malloy's admissions to this and Mr. Devlin's concession that he traded with discretion without written approval, in his case he claimed because there were no forms available, the appellee, Stifel, conceded in its own briefs that Mr. Devlin was trading with discretion. Therefore, such findings are binding judicial admissions. They take the issue away from... You're assuming that we have jurisdiction here? Are you speaking about the Badgero case, your honor? Pardon me? You're asking about jurisdiction? Yes. The Badgero decision? Yes. You are. Are you assuming that we have jurisdiction here? Yes, I am assuming. Well, both parties took the same position. Both parties have taken the position that we have jurisdiction. Yes. That doesn't give us jurisdiction. That doesn't confer jurisdiction. That's true. So the jurisdiction, the filing that we used to initiate the case, not only cited the Federal Arbitration Act, which I concede was in Article 9, but we also cited... I realize both parties agree that there's jurisdiction, but you just can't... Parties conferring jurisdiction on the court. The law is clear in terms of 10b5 violations, the Securities Exchange Act, that the federal courts have exclusive jurisdiction over disputes arising... That's right. I know that there is that jurisdictional provision in the Securities Exchange Act, but under 1331, we're now told by the Supreme Court that when there's a motion to vacate an arbitral award under Section 9 or Section 10 of the FAA, that there has to be the characteristics of a 1331 complaint. Why should we interpret this motion to vacate as alleging a violation of the security laws? The way the complaint was... I know there's no look through jurisdiction, so let me get that beginning. I acknowledge that. But the complaint, which was part of the motion to vacate, included certain state causes of action, each of which were incorporated by reference to... I'm asking whether the motion to vacate provided alleged that federal... properly alleged that federal law entitled you to relief. And if you're proceeding for securities law violation, I would expect to see, among other things, some discussion of scienter and some discussion of materiality. And do those items appear in your motion to vacate? Everything that we discussed in the motion to vacate went to the issue of whether or not Rule 10b-5 was violated. This includes the trading with discretion, which made the respondent... The bottom line here is that your motion to vacate ought to include some reason that federal law entitles you to relief. And I'm just not sure you can make a conclusory statement that the Securities Act affords exclusive federal jurisdiction unless you've pled, according to pleading rules, unless you've pled a violation of that statute. So the question I'm asking is whether the... where in the motion to vacate is there a discussion of scienter and materiality and the normal kinds of elements that one would expect when pleading a securities law violation? My recollection is that when we filed the motion to vacate, we filed the motion predicated on both the Federal Arbitration Act and a violation of Rule 10b-5, the Securities and Exchange Act. We then, in the opening paragraphs of the motion to vacate... But you're after under 1331, which is what I think the lodestar is, there has to be a certain plausibility to what you're... to what the pleading advances. I'm asking you to discuss with me where your motion to vacate has talked about scienter and materiality. The motion to vacate was accompanied by... you're asking me to do it on the non-look-through basis, right? Is that what you're focusing on? Because on a look-through basis, the complaint was provided to the court and the entire case was argued about that. All of the faults that took place through the trading were violations of 10b-5, which is You've conceded that we shouldn't look through to the complaint. That's what Badgerow says. Okay, right. So then the question is, what is it in the motion to vacate, other than your allegation that the arbitrator manifestly disregarded the law, which is, I don't think, an independent basis of jurisdiction, what is it beyond that that establishes subject matter jurisdiction? The filing was done on the docket sheet. You're talking about the district court level, correct? No, I'm talking about the motion to vacate. You say that the arbitrator manifestly disregarded the law. That is a claim that arises under the FAA. It's not, to my knowledge, an independent basis for subject matter jurisdiction. So the question is, what beyond that? The law that we claim was violated were the clear decisional law that define 10b-5, misleading the customer, not keeping the customer informed. We're in a new world. Don't you agree with after the Supreme Court case? Absolutely. So in that new world, I think you have to say that the SEC separately authorized jurisdiction to review arbitration award doesn't get it because it doesn't do that. It's not like the Labor Management Relations Act, which does separately authorize that. In the attachment that we provided to our supplemental brief, which I believe was filed last December, I believe on an addendum, I attached to the statute itself from the SEC that says that the federal courts have exclusive jurisdiction over. I don't think you're getting the point of the panel's questions. You can't just establish jurisdiction any more than you could under 1331 by just saying the securities guy gives federal jurisdiction. You'd be bounced out. But there has to be a certain explanation as to why federal law entitles you to relief. That's what we're asking when in the motion to vacate, which is the operative document, we need to know why federal law would entitle you to relief. And I'm not sure that you're getting the point. Just listing a federal statute is enough to address the Supreme Court decision in Badgeroo or what have you, when the clear gravamen of the complaint, counsel, the clear gravamen of the complaint seems to be state law violations. The gravamen of the complaint, your honor, all of the state court violations were incorporated by reference in the count that included 10B5. It was structured that way purposefully so that everything that was said before that became part and parcel of that cause of action. What Badgeroo said, and Badgeroo limited the instructions, by the way, it was decided three the document here, it says on page 129, Supreme Court 1316, or if it alleges federal law beyond section 9 or 10 itself, entitles the applicant to relief. Then 1331 gives the federal court federal jurisdiction. And in the complaint, or in the appeal, and in the motion to vacate, we said this court has jurisdiction over this action pursuant to the Federal Arbitration Act cited and the Securities Exchange Act of 1934, 15 U.S.C., section 78J, parent B. Is it your contention that the jurisdictional test is a manifest disregard of federal law? Of the Securities Exchange Act federal law, yes. Is that the jurisdictional test then? Yes. No. Why would it be? Because that's a merits judgment as to whether the federal law was disregarded. And if we take that as our operating standard, first of all, it's a vague test. And you don't want jurisdictional tests to be vague. And the manifest disregard of federal law is a vague test. So, but in addition to being fuzzy, it seems to me that we risk putting the cart before the horse because whether the arbitrator manifestly disregarded federal law or whether the only after establishing that we have jurisdiction in the first place. That's, see, that's my problem. I'm very skittish about having a manifest disregard be the jurisdictional test, both because it's vague, but also because it's a merits judgment on whether the arbitrator did or did not proceed correctly. And we can't get to that. As much as I might like to, we can't get there unless you make a plausible case that federal law entitles you to relief. That's not that hard to do under 1331. It's not that hard, but it still has to be done. Your Honor, if I know my time is quite limited here, but if manifest disregard, the allegation of manifest disregard becomes decoupled from the Securities and Exchange Act, then what the court would essentially be deciding is that securities cases that are arbitrated, which all of them are 99% of them are, never coming to this court. The facts, the standards of 10B5, the standards of the SEC are broadly written to encapsulate. This is how the Supreme Court defined it. Before the arbitrator, the key issue was whether there was a manifest disregard. No, the key issue before the appellate court is whether there was a manifest disregard. The key issue before the arbitrators was to listen to the evidence and apply the evidence to the law as they knew it. And they did not do that. They ignored the fact that, I see I have six seconds. Keep talking in response to the question. You can't have a manifest disregard of the arbitral award until the arbitral award is for not having listened to you under the law as it applies to the facts that they have not heard about it. But once you have a remarkably astonishing decision, like we did here, where the federal law is so clear about fiduciary duty when there's discretionary trading, and how that is defined by Leib, all roads lead to one result, which was a finding of liability under federal law. It was a violation of 10b-5. But if the cart is before the horse, which is frankly, and I mean no disrespect of this, the nature of the questions coming, those were never before the arbitrators. It was the arbitrators themselves that engaged in manifest disregard, not the defendant. The arbitrators ignored the law that was applicable to the factual concessions that were made by the respondent. Mr. Rosen, a couple of points in response to what you just said. If in fact, the law has affected a sea change here, it's not because of us, it's because of the decision in Badgero. That's the first point. The second point is that it's not, I don't think absolutely true that there's virtually no way to get an SEC claim before a federal court. I imagine if you've got diversity between the parties, that would be an independent grant of jurisdiction that would allow the federal court to hear a motion to vacate. So that's the second point. And the third point is that you're not left without a remedy, right? The remedy is to go to state court and litigate the motion to vacate in state court. So that may be the result. It may not be to your liking, but that's, I think you can see by the tenor of our that should be the result. I don't know how that logic, frankly, can apply to the expressed statutory statement in federal law that says that the federal courts have exclusive, not non-exclusive, but exclusive jurisdiction over these securities claims. That's only when they're litigated in That's true when the cases are litigated in federal court, but here you all agreed to arbitrate. It was in, it was definitely arbitrated in federal court. We were obligated to arbitration is different though. That's what the whole, your whole problem is here. I don't, I don't really think you understand that. That we're talking about review of an arbitration award. Now, for example, the Labor Management Act gives a court the ability, federal court, the ability to review an arbitration award expressly. We don't have that here. When the Supreme Court decided Badgero, it limited, it refined it. It said section four appeals are fine. It moved to section nine arbitration award appeals. Yes. And it was very explicit in stating what your honor, what judge Machu just said, that it can come there through diversity or it can come through an exquisite allegation about a violation of federal law, a federal statute. And that is exactly what we put. That's exactly what we wrote down. That's exactly what was litigated. I'm not sure they used the word explicit allegation. I think that the crucial sentence there is that federal law beyond section nine or section 10 entitles the applicant to relief. This is not hard to establish. As I see it, just as federal courts may retain jurisdiction in a diversity case, so under 1331 can we retain, have jurisdiction in a federal question case if the complaint establishes that federal law provides an entitlement to relief. And I'm just not sure that citing the Securities Act of 1934, an exclusive jurisdiction meets that phrase that federal law entitles an applicant to relief. It seems to me you would plead the elements of federal law that would, of the elements of the Securities Act, that would entitle you to relief. The Supreme Court doesn't just say an allegation or a citation to a federal statute anywhere in the motion to vacate. Otherwise, its rule could be circumvented because every motion to vacate would include some passing reference to a federal statute. And whoops, the Supreme Court's decision is reduced to meaninglessness. So you have to do something more than just list the federal statute, your honor, and send the joint record extract at page 308 and 309. It incorporates all of the allegations ahead of time. The pleading on appeal matches up with it. And you have section 78 AA of the federal law, title 15. It says the district courts of the United States and the United States courts of any territory or any place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder. This is exactly what we did. We met the standards of Badgera before it was even decided. All right, thank you, Mr. Rosen. Mr. Ziff? You say we have jurisdiction too, so maybe you can speak to that. Yes, and I'm going to go with good morning. I beg your pardon? I'm going to go with your morning, good morning. And is that it? And I cede all my time to Mr. Rosen, let him back up and handle this issue. I think the starting point for the analysis on jurisdiction is what Judge Kagan said. The obvious place to start is the face of the application itself. And went on to say I can't quite hear you, so can you talk a little bit? Yeah, thank you. I'm suffering from allergies also today, so I'm a little raspy. I apologize. But what he said, obviously a starting place is the application itself. And whether or not there's an allegation that federal law beyond Sections 9 and 10 of the FAA entitles the applicant to relief, then you have Section 1331 jurisdiction based on a federal question. And so I think when I listened to the Supreme Court argument on Badger O, one of the things that came up was whether or not such a strict application would only limit the court to diversity jurisdiction on issues that may involve securities. And what was discussed was whether, and I think this is in Badger O, this is also in the Smart Sky decision that was recently issued by this court, whether or not we're looking to just enforce a contract, which I think is the basic element of a motion to vacate, is what the court looked at, versus whether we're looking to adjudicate a federal question. And that was a struggle in filing our supplemental brief, was how does that fit? How does that language fit? And what we came to conclude by reading the pleadings was that they are looking for an adjudication of a federal question. They felt that federal question wasn't adjudicated properly by the arbitrators and was glossed over and not dealt with by the district court. Do you understand that nobody here, at least as I can see, is arguing that this decision eliminated 1331 as the basis of a section 9 or 10 motion to vacate. I don't think anybody would want to go that far because there would be no reason to say, yes, you can establish jurisdiction in diversity, but you can't establish jurisdiction under 1331. That would be anomalous. But the question is, why did this motion to vacate sufficiently establish federal law via 1331 as providing entitlement to relief? Why? What was there about this motion to vacate that established a 1331 basis for our jurisdiction? I think it was what your honor has brought up of what the elements are for a 10b or a 10b-5 violation, which are, you know, whether there was scienter, whether it's a misrepresentation. That's what the focus is of the motion to vacate is whether or not that was applied correctly. Whether those elements were viewed by the panel and whether they were applied correctly. And I think the difficulty with making a decision on that is that there was not the elements set out in the, whether it was in the decision or in the motion, in the appellant's motion. They don't outline those elements. You really have to dig through their brief. And again, that was the difficulty we had in trying to respond to your request for a supplemental brief. Where are those elements? Where are those elements in their application? And you really have to kind of sort through and make certain assumptions. Now, there is a suitability claim. Suitability under the Brown v. E.F. Hutton case, which we cite in our brief, talks about suitability being a derivative of 10b. So the elements of a suitability case incorporate 10b, Section 10b and Rule 10b-5. That's one of the, that's one of the allegations that they have that the suitability determination was incorrect. And I'll get, I can get into the arbitrator's decision was proper. Mr. Ziff, can I, I'm sorry to interrupt you, but, and you started off with Badgerow and you said you heard the oral arguments and there was some discussion about whether or not this was intended to, you know, just clear the field with respect to 1331 and in particular federal securities litigation. So what was your conclusion about that? What did the Supreme Court say of anything about that? That it was not the, the indication was that was not the intent of Badgerow. Well, then how do you read the language in, in, in Badgerow where apparently there was a federal question, there was federal question jurisdiction in the initial dispute? Do I have that right? There was in the underlying dispute. That's the same, same here, same thing here. And then the court says you can't look down to that dispute to consider whether or not this federal jurisdiction. And then Judge, Justice Kagan says you can't consider diversity jurisdiction because the parties are from the same state. And then she concludes their application raises no federal issue. Rather, they're contesting the legality of Badgerow's firing. They're not contesting the legality of her firing, but the enforceability of an arbitral award. Isn't that precisely what's happened here? And she concluded that there was jurisdiction. No, I think the difference between what we have here today and what was before Badgerow is the basis for the motion to vacate was fraud. There was an underlying federal claim in the underlying suit and that would require a look through. The basis for the motion to vacate here is manifest disregard of the law. Of a, of a federal statute. Okay. And you think that's the I think that's the distinction. If you look at both Badgerow, which was a simple fraud in the, during the arbitration process, and that's what brought the motion to vacate. And there was no diversity. Is that your view that the manifest disregard is enough of federal law is enough to supply jurisdiction? I think you have to have the manifest disregard principle has to apply to and be raised to a federal question. You're going to be litigated all day and night over what a manifest disregard is. And as I've mentioned to your opponent, to have a jurisdictional test that's fuzzy as manifest disregard is problematic. It's one way, but then if you have to look at the manifest disregard and whether the arbitrator manifestly disregarded something, we're essentially reviewing the merits, it seems to me, of the whole arbitration proceeding. So I don't understand why the other phrase in the Badgerow decision isn't the crucial one, which is that the motion to vacate has to establish that federal law entitles the mover to relief. That would seem to me, because it doesn't seem to me that's that hard to do any more than filing a complaint in federal court under 1331. That's not that hard to do, but it still would have to be done. I think the manifest disregard test would probably be the worst of all possible worlds because we'd be litigating the merits under a fuzzy test and everything like that. But I don't understand why the appropriate test wouldn't be to establish in the motion to vacate why federal law entitles you to relief. And in this case, that would seem to me to entail maybe some discussion of scienter and materiality and the normal kinds of things that go along with a complaint of a securities law violation. I'm just hung up on that, okay? Understood. I think the way it is pled, I think is what your honor is hinting toward. And I think in this particular case, the difficulty is that those elements of a 10B or 10B-5 violation... You've kind of been caught in the shifting gears of the law, haven't you? To an extent, yes. I mean, that's why the deficiency is, you probably would have, it might have been litigated differently. And I have some sympathy for you because I think all of a sudden in the middle of things, you were thrown this test and you were caught in the shifting gears. The litigation was caught in the shifting gears. But it seems to me we still, because the case is on final. But we're not at fault for this shifting terrain. But we do have a serious obligation to follow what the Supreme Court is saying in a non-final case. And I have no doubt this would have been phrased differently and everything would have been done differently if you had been aware. Is that fair? That's fair. I think, isn't this what we live for, though, is these shifting gears and trying to interpret the law and especially new law? I think in this case, and it's obviously developing, the Badger case is still relatively new. But what the distinctions that I see in the case... I'm sorry to interrupt you. That's fine, Judge. A word in here. As I understand it, what you're saying is the Securities and Exchange Act provides an independent basis for jurisdiction here. Is that what you're saying? Based on what their manifest disregard of the law argument is, yes. But does the Securities and Exchange Act provide jurisdiction over the outcome of an arbitration award? And that's the fundamental problem you have. I don't think it controls the outcome of an arbitration award, but if that... The jurisdiction. The jurisdiction. But I think if the arbitration award... Because the Supreme Court says you have to have an independent basis for jurisdiction, and both of you seem to feel that the SEC Act does that, but it doesn't say anything about that. And there are statutes that do say that it just gives you a right to arbitration. So they would be the statutes that you would point to, or diversity jurisdictions. Not that you're doing away with arbitration forever or appeals from arbitration, but you are dealing away with ones that are based on a federal statute that doesn't give you a right to appeal an arbitration award. It doesn't have that built into the statute. That's correct, Your Honor. But you don't think that's important? I think it's... Well, it's a distinction between statutes, but I think in this particular case, the difference is between Badgero and the SmartSky decision, and what we have here is whether we're just looking to enforce an arbitration agreement, a contract, or whether we're looking for the adjudication of a federal question. And I see the adjudication of a federal question being brought up in this case, which was not an issue in Badgero, which was not an issue in SmartSky. And that, I think, is the distinction between those cases and what we have before the Court today. I hear you. Do you have anything else? Not on the jurisdictional issue. I think what I would cite the Court to, I mean, we covered this in our papers, and I think it's well-versed because there's been a number of decisions in the federal court as to the extent of the burden that's required on the appellant in overturning a motion to vacate. There's a number of decisions out of this Court that talk about the significant hurdles that a client has to, an appellant has to mount before they can achieve a motion to vacate. Language such as the judicial review of a motion to vacate is severely circumscribed. It's among the narrowest known at law. There's a number of decisions that talk about manifest disregard and what that legal principle stands for. That's both in the Warfield decision, which is out of this Court, and also the Interactive Brokers decision. And that's exactly what Judge Gallagher did. Judge Gallagher applied all of those standards that have been repeated by this Court in numerous decisions in her finding, in her memorandum opinion, that denied the motion to vacate. And I can refer the panel to page five of that memorandum, which sets that out. There's additional guidance that's offered through the decisions out of the Fourth Circuit, Fourth Circuit precedent that talks about it's not the Court's province to determine the merits of any decision, whether the arbitrators did their job. That's really the role of the Court, is whether they did their job. It's not for the Court to pass judgment on the strength of the arbitrator's decision. But what the appellants want is they want another bite at the apple. They want you to retry this case. And that's not the role of the Court. They want you to take their slant on the facts. They want you to take their slant on the law and apply that to this case. That's not what an appeal on a motion to vacate is all about. Judge Gallagher, in her opinion, acknowledged all of the different factual and legal issues that were presented to the arbitrators. It was a myriad of legal issues and a myriad of factual issues. Counsel started out by talking about discretion. That was a central issue. While discretion was taken in the accounts, the term unauthorized was used. That was not what was the testimony. That was not what was found in our case. Clearly, the evidence that we presented at the arbitration and in the record in this case showed that each of the claimants authorized their use of options. There's signed forms. There was testimony. So it was covered in many different forms. I think one of the main issues is the deference that the law applies to an arbitration award. And I think the case that we have before this Court is a perfect example of why that deference is appropriate. The claim in our case was filed back in October of 2019. We had a COVID lapse, so we weren't able to try it until September through December of 2021. The award was issued in January of 2022. We had eight different claimants in this case. And as much as the claimants wanted to lump themselves all together, there were eight different claimants that were presented in the arbitration. The arbitrators had to distill through the facts and the law as to eight different claimants and make a determination as to whether or not there was liability. We had 13 witnesses testify. Three of them were experts, two from the appellant side, one from us. There were 15 binders, and I don't have them here today to illustrate, but 15 binders of exhibits that were offered to the arbitrators through 10 days of hearings. The arbitrators did their job. They listened to the evidence, they distilled the evidence, and they applied it to the law, which was disputed as to what the appropriate law was. So what we request is that the court deny the appeal and just affirm the district court's denial of the motion to vacate. Thank you, Mr. Rosen. Uh, Mr. Ziff, sorry. Thank you. Mr. Rosen? Thank you for allowing me time to rebut. I just want to, I don't want to belabor this badger row thing, but it is obviously very important to the court. Joint appendix, page 13. In the district court, just as we did to this court, we expressly contended that this motion to vacate concerned the Securities and Exchange Act. The Supreme Court, in the badger row decision, in making clear that you don't look through past that bare jurisdictional allegation, that's what's determinative because it took away the look-through features that let you go deeper. This court, in Wachovia Securities v. Brand, 671 Federal 3rd, 472, at pages 480 to 481, decided, characterizing manifest disregard of the law as a common ground for vacator, separate and distinct from section 10 of the FAA's statutory ground. We followed badger row to the letter. Now, if I can take a moment and just shift back to the argument that we just heard, at least we didn't get much on the merits here because of time. The discretionary trading was conceded to exist. And in fact, I believe Judge Wilkinson authored a decision on discretionary trading called Trumbull v. Wachovia, 436 Federal 3rd, 443. In 2006, and made clear that discretionary traders are fiduciary traders, whether they are authorized discretionary traders, or they've taken authority without proper authorization and take on the role of a discretionary trader, does not emancipate them from the fiduciary obligations that they have in trading. And in this case, since it is conceded that there was discretionary trading as a matter of law, it was conceded that they were trading in a fiduciary status. It was also conceded that the trading that took place and put sales was concentrated and that concentrations are unacceptable. They're not suitable as a matter of rule by FINRA. It's a matter of policy by STFL and as a matter of the standards of care. We had the corporate representative concede these faults. These were admissions that were a fact. They were uncontroverted. They go right to the issue of whether or not there was a fiduciary violation. And these were conceded facts. Yes, there were a lot of witnesses. Yes, there were a lot of documents. And similarly, there were many opportunities on the part of the respondent, in this case, the appellee, to challenge the concessions made by the corporate representative. And those concessions were never controverted. They were never contextualized. Those became binding. They took the dispute of fact away from further review because they were established. That's what admissions are. This court discussed admissions in the sequel to the Berkshire case, Meyer v. Berkshire, and it cited other cases. Generally, they come up in the context of lawyer admissions, attorney admissions, but they also can become, come, arise out of witness, authorized witness, factual admissions that are adverse to the interest of the party on whose behalf that corporate representative is testifying. And that's exactly what we have here. We have the corporate representative who, the entity terminated this financial advisor for trading without a proper authorization. The documents that were made contemporaneously at the time validated the concessions, that there were concentrations in the account. There's no denying that there were thousands and thousands of put sales done in accounts that were supposed to be, at that point, converted to fiduciary accounts. There's no dispute that the clients were never informed about it, which was a direct violation of LIEB. We both cited it. We both relied on it. It defines what the duties of a fiduciary are. And this case fits hand in glove with those violations, every one of which arise out of concessions made, not controverted, by an authorized party under oath in the arbitration, who also wore a second hat previously. He was the manager of the person involved. And that person involved never even let him supervise, because it hid from the supervisor that he was trading with discretion. The supervisory failures in this case were also conceded. Liability was mandatory. There were no alternative paths to conclude the legitimacy of a decision against us. And I see my time has expired. Thank you, Mr. Rosen. Okay, thank you. Thank you both for your arguments. We'll come down and greet counsel and move on to our second case.
judges: Albert Diaz, J. Harvie Wilkinson III, Diana Gribbon Motz